**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **FREESTYLE BRANDS, LLC,**<br><br>Plaintiff,<br>**v.**<br><br>**EVORA COMPANIES LLC and EVORA JEWELRY CO., LLC,**<br><br>Defendants. | **Case No.**<br><br>**Hon.**<br>**Magistrate** |

**COMPLAINT AND JURY DEMAND**

Plaintiff Freestyle Brands, LLC ("Freestyle" or "Plaintiff") for its Complaint against Evora Companies LLC and Evora Jewelry Co., LLC (collectively, "Evora" or "Defendants") alleges as follows:

## I. NATURE OF ACTION

1. This is a complaint for trademark infringement, unfair competition, and dilution against Defendants for their unauthorized use of Plaintiff's trade dress.

2. For more than 40 years, Plaintiff and its predecessors in interest have sold a watch bearing a unique trade dress under the SHARK brand. This trade dress is distinctive and non-functional and has become widely recognized as an indicator of the source of Plaintiff's Shark watches.

3. Defendants, without authorization and with knowledge of Plaintiff's prior rights, commenced the use of confusingly similar trade dress in connection with the same or virtually identical products (the "Infringing Watches")

4. Plaintiff brings this action in order to prevent consumer confusion in the marketplace and protect its valuable intellectual property assets.

5. Accordingly, this is an action for trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), common law infringement under the laws of the State of Texas, and Federal Trademark Dilution.

## II. THE PARTIES, JURISDICTION, AND VENUE

6. Plaintiff is a limited liability company organized under the laws of Delaware with a principal place of business at 2701 E State Highway 121, Suite 650, Lewisville, Texas 75056.

7. Upon information and belief, Defendant Evora Companies LLC is a limited liability company organized and existing under the laws of the State of Arizona, located at 1738 South Gilmore Circle, Mesa, Arizona 85206.

8. Upon information and belief, Defendant Evora Jewelry Co. LLC is a limited liability company organized and existing under the laws of the State of Arizona, located at 1738 South Gilmore Circle, Mesa, Arizona 85206.

9. Defendant sells its Infringing Watches throughout the country including in the State of Texas and in this Judicial District. For example, Defendants operate a fully interactive website at www.evoracompany.com which allows consumers to purchase the Infringing Watches at least throughout the United States, including in the State of Texas and in this Judicial District. A screenshot of this website showing an example of the Infringing Watches for sale is shown below:



The Defendants' website specifically allows consumers to ship the Infringing Watches to Texas, as shown in the screenshot below:




10. Defendants also primarily advertise their Infringing Watches through social media including Instagram, Facebook and TikTok, all of which are available in the State of Texas and in this Judicial District.

11. Defendants also advertise their products through paid partnerships with influencers, many of whom are located in Texas. For example, on September 2, 2023, an influencer named Grace Williams who is located in Houston, Texas, posted a video of her unboxing a new Evora watch as part of a paid partnership with Evora. This video can be found at https://www.tiktok.com/t/ZP8HTGm4m/ and a screenshot is posted below:




12. Defendants also have entered into a paid partnership to advertise its Infringing Watches with an influencer named Carley Bearden who is located in or around Dallas, Texas. This is evidenced by a video Ms. Bearden posted on TikTok on April 4, 2025, advertising the Infringing Watches. This video can be found at https://www.tiktok.com/@carleybearden/video/7495920245811514666. As can be seen from the screenshot of this video below, Ms. Bearden states that she is in Texas and that she is making the video as part of a paid partnership. In addition, Defendants have provided Ms. Beard with an affiliate link through which, upon information and belief, she makes a percentage of all of Defendants' Infringing Watches sold to her viewers who click the link. Ms. Beard prominently posts this link on her TikTok page, and it can be found at https:// www.evoracompany.com%2Fcarleybearden.




13. Defendants have also hired Reagan Popoff, a cliff jumper and internet personality from Dallas, Texas, to advertise its Infringing Watches. As part of this collaboration, Evora and Reagan made Instagram posts in 2024 advertising the Infringing Watches, as shown in the screenshots below:







14. This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claims under Texas law.

15. The Court has specific personal jurisdiction because Defendants have purposefully availed themselves of the benefits of doing business in this Judicial District including by at least (1) directly selling the Infringing Watches in this Judicial District through their interactive website, (2) advertising their Infringing Watches in this Judicial District, and (3) paying Texas-based content creators to advertise the Infringing Watches throughout the US, including in the State of Texas and in this Judicial District. Each of these contacts with Texas is directly related to the action complained of herein, namely Defendants' sale of the Infringing Watches within this district. Moreover, these actions have caused injury to Plaintiff in this state and district. Due to these contacts, Defendants should expect to be haled into Court in the State of Texas and in this Judicial District.

16. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because, as explained herein, a substantial part of the events or omissions giving rise to this claim occurred in this Judicial District.

## III. FACTUAL BACKGROUND

### A. Plaintiff and its Trademark Rights

17. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

18. For more than 40 years, long prior to the acts of Defendants herein, Plaintiff and its predecessors in interest, have sold watches under the name SHARK that bear a distinctive and well-known design in the United States and throughout the world. Examples of this trade dress is depicted below:




19. Plaintiff's trade dress encompasses one or more of the following features: (1) a plastic rectangular watch case in various colors having the corners at an angle; (2) a separate plastic rectangular bezel also having the corners at an angle in various colors, attached to the watch case with visible screws at the corners of the bezel; (3) a pattern or solid color on the face of the watch

between the digital display and the bezel; (4) a rectangular digital display; (5) pushers on the sides of the case having contrasting colors; (6) a rectangular outline with rounded corners around the digital display, with a break in the rectangle bearing the brand name of the watch; (7) the watch allowing for readily changing the watch strap and bezel; (8) a flexible fabric watch strap in various colors attached to the watch case; and (9) a unique band closure. This trade dress shall be referred to herein as the "Freestyle Shark Trade Dress."

20. The Freestyle Shark Trade Dress is entitled to protection under the Lanham Act. The Freestyle Shark Trade Dress includes unique, inherently distinctive and non-functional packaging designs.

21. The Freestyle Shark Trade Dress has also acquired distinctiveness through extensive and continuous promoted and used its Trade Dress in commerce in the United States. Through that extensive and continuous use, The Freestyle Shark Trade Dress has become a well-known indicator of the origin and quality of The Freestyle Shark watches. The Freestyle Shark Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, The Freestyle Shark Trade Dress acquired this secondary meaning before Defendant commenced its unlawful use of The Freestyle Shark Trade Dress in connection with the infringing products.

22. The Freestyle Shark Trade Dress in the overall look and appearance of its watches is non-functional. There is no functional purpose for the use of look and appearance of The Freestyle Shark watches. The look and appearance of The Freestyle Shark packaging design is not needed for a competitor to compete in the marketplace for sales of watches.

23. The Freestyle Shark Trade Dress is uncommon and designed and selected to distinguish The Freestyle Shark watches in the marketplace. There is no functional reason to use the exact combination of: (1) a plastic rectangular watch case in various colors having the corners

at an angle; (2) a separate plastic rectangular bezel also having the corners at an angle in various colors, attached to the watch case with visible screws at the corners of the bezel; (3) a pattern or solid color on the face of the watch between the digital display and the bezel; (4) a rectangular digital display; (5) pushers on the sides of the case having contrasting colors; (6) a rectangular outline with rounded corners around the digital display, with a break in the rectangle bearing the brand name of the watch; (7) the watch allowing for readily changing the watch strap and bezel; (8) a flexible fabric watch strap in various colors attached to the watch case; and (9) a unique band closure. This precise combination is not the reason the product works.

24. There are myriad other watch designs that accomplish the same purpose. Therefore, use of the combination of: (1) a plastic rectangular watch case in various colors having the corners at an angle; (2) a separate plastic rectangular bezel also having the corners at an angle in various colors, attached to the watch case with visible screws at the corners of the bezel; (3) a pattern or solid color on the face of the watch between the digital display and the bezel; (4) a rectangular digital display; (5) pushers on the sides of the case having contrasting colors; (6) a rectangular outline with rounded corners around the digital display, with a break in the rectangle bearing the brand name of the watch; (7) the watch allowing for readily changing the watch strap and bezel; (8) a flexible fabric watch strap in various colors attached to the watch case; and (9) a unique band closure. is non-functional.

25. The use of an combination of: (1) a plastic rectangular watch case in various colors having the corners at an angle; (2) a separate plastic rectangular bezel also having the corners at an angle in various colors, attached to the watch case with visible screws at the corners of the bezel; (3) a pattern or solid color on the face of the watch between the digital display and the bezel; (4) a rectangular digital display; (5) pushers on the sides of the case having contrasting colors; (6)

a rectangular outline with rounded corners around the digital display, with a break in the rectangle bearing the brand name of the watch; (7) the watch allowing for readily changing the watch strap and bezel; (8) a flexible fabric watch strap in various colors attached to the watch case; and (9) a unique band closure is also arbitrary and also has no functional purpose.

26. The Freestyle Shark Trade Dress and its particular combination of elements as defined herein includes aspects of watches that are uncommon, arbitrary and serve no functional purpose, so as a whole, the Freestyle Shark Trade Dress is non-functional. Indeed, its only purpose is to distinguish the goods of Freestyle from the competition.

27. Plaintiff and its predecessors have exclusively and continuously offered watches bearing the Freestyle Shark Trade Dress in commerce throughout the United States for over forty years.

28. Plaintiff has expended considerable time, effort, and expense in advertising and promoting the Freestyle Shark Trade Dress and the goods associated with these names.

29. Since its introduction, Plaintiff has invested very significantly in the marketing of its products under its Freestyle Shark Trade Dress through a variety of means, including television advertising, various types of print advertising, dealer promotions, consumer promotions, the Internet, and in other ways customary to the trade.

30. As a result of Plaintiff's efforts, consumers have come to identify and recognize the Freestyle Shark Trade Dress as an indicator of the source of Plaintiff's Shark watches.

31. The Freestyle Shark Trade Dress has become well-known and widely recognized by consumers in the State of Texas and throughout the United States to indicate the source of Plaintiff's Shark watches. The Trademark and Trade Dress are famous.

32. As a result of Plaintiff's extensive usage and promotion of the Freestyle Shark Trade Dress, Plaintiff has developed valuable goodwill and strong common-law rights in the Freestyle Shark Trade Dress.

33. Plaintiff's Freestyle Shark Trade Dress is an intangible asset of substantial commercial value.

**B. Defendants and their Infringing Activities**

34. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

35. Defendants distribute jewelry and watches in Texas, including in this District, and throughout the U.S. as described above. Upon information and belief, Defendants acted in active concert or participation with respect to all the acts described herein.

36. Defendants' Infringing Watches contain the Freestyle Shark Trade Dress including: (1) a plastic rectangular watch case in various colors having the corners at an angle; (2) a separate plastic rectangular bezel also having the corners at an angle in various colors, attached to the watch case with visible screws at the corners of the bezel; (3) a pattern or solid color on the face of the watch between the digital display and the bezel; (4) a rectangular digital display; (5) pushers on the sides of the case having contrasting colors; (6) a rectangular outline with rounded corners around the digital display, with a break in the rectangle bearing the brand name of the watch; (7) the watch allowing for readily changing the watch strap and bezel; (8) a flexible fabric watch strap in various colors attached to the watch case; and (9) a unique band closure. These similarities are shown in the image below, with the numbers corresponding to the list set forth above:




37. Defendants' Infringing Watches are a knock-off reproduction, copy, or colorable imitation of the Freestyle Shark Trade Dress

38. Defendants' unauthorized commercial use of its Infringing Watches is likely to cause confusion, or to cause mistake, or to deceive consumers and potential consumers of Plaintiff and Defendants as to the affiliation, connection, or association of Defendants with Plaintiff, or as to origin, sponsorship or approval of Defendants' goods, or commercial activities of Plaintiff.

39. Defendants' unauthorized use of its confusingly similar watch design falsely indicates to the purchasing public that Defendants, their business, and their goods or services originate with Plaintiff, or are affiliated, connected, or associated with Plaintiff, or are sponsored, endorsed, or approved by Plaintiff, or are in some manner related to Plaintiff or its goods and services.

40. Defendants' unauthorized use of its confusingly similar watch design falsely designates the origin of Defendants' goods, and falsely or misleadingly describes and represents facts with respect to Defendants and their goods.

41. Defendants' unauthorized use of its confusingly similar watch design enables Defendants to trade on and receive the benefit and goodwill built up at great labor and expense by Plaintiff, and to gain acceptance for Defendants' goods based on the reputation and goodwill of Plaintiff, its goods, and the Freestyle Shark Trade Dress.

42. Defendants' unauthorized use of its confusingly similar watch design enables Defendants to palm off its goods on the unsuspecting public as those of Plaintiff.

43. Defendants' unauthorized use of its confusingly similar watch design removes from Plaintiff the ability to control the nature and quality of goods and services associated by consumers with its marks, and places the valuable reputation and goodwill of Plaintiff in the hands of Defendants, over whom Plaintiff has no control.

44. As a result of Defendants' unauthorized use of its confusingly similar watch design, Defendants are being unjustly enriched at the expense of Plaintiff and the public.

45. Defendants have damaged Plaintiff's goodwill and reputation and are continuing to damage Plaintiff's goodwill and reputation by their illegal acts. Unless Defendants are restrained by this Court, Defendants will continue to cause irreparable injury to Plaintiff and the public for which there is no adequate remedy at law.

46. Plaintiff first notified Defendants that their watches infringed the Freestyle Shark Trade Dress on or around August 14, 2023 via a letter from Plaintiff's counsel to Defendant.

47. Defendants responded to this letter on August 22, 2023 requesting additional details regarding the Freestyle Shark Trade Dress.

48. On November 27, 2023, Plaintiff's counsel sent a letter to Defendants' counsel setting forth in detail the basis for Plaintiff's infringement claim. This letter included the direct comparison of the parties' products that is set forth above.

49. On February 22, 2024, Defendants' counsel sent a letter to Plaintiff's counsel representing that it would be changing the design of its watches.

50. Despite Defendants' representations in February 2024 that it would be changing the design of its watches, to date Defendants have failed to do so.

51. Defendants' continued infringing conduct and blatant disregard for the Freestyle Shark Trade Dress leaves Plaintiff no choice but to file the instant lawsuit to protect its rights.

52. Moreover, Defendants' adoption of its confusingly similar watch design was done willfully and wantonly.

53. As discussed above, Defendants' have had actual knowledge of Plaintiff's claim since at least August 14, 2023, yet Defendants have persisted in their infringement.

54. Defendants' advertising is also targeted towards Plaintiff's consumers. For example, an influencer named Avery Cyrus had long been a fan of Plaintiff's watches. On or around June 3, 2023, Defendants sent Ms. Cyrus their watch. Ms. Cyrus subsequently posted a TikTok video on the Defendants' account saying that "@evoracompany may have just replaced the og." This video can be found at:
https://www.tiktok.com/@evorawatches/video/7240616346969541930?%20lang=en.

55. Defendants' also bragged about the similarity of their watches to the Freestyle Shark Trade Dress. For example, on February 2, 2022, Defendants posted a video on TikTok with writing on the video stating "these watches look exactly like shark watches." This video can be found at:
https://www.tiktok.com/@evorawatches/video/7067278144994217262?lang=en&q=evora%20watch%20vs%20shark&t=1687188174042.

56. The foregoing shows that Defendants' intended to trade off Plaintiff's goodwill and reputation it has built through over forty years of continuous and exclusive use of the Freestyle Shark Trade Dress.

57. People on social media have even noted the similarities between the parties' products. For example, in response to one of Defendants' Facebook posts, a commenter named Travis Rodgers stated: "Shark Freestyle Watches should sue yall." Upon information and belief, Plaintiff has no relationship with Mr. Rodgers.




58. In view of the egregious nature of Defendants' actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

**COUNT I:**
**FEDERAL TRADEMARK INFRINGEMENT BY DEFENDANTS**

59. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

60. The acts of Defendants complained of herein constitute trade dress infringement in violation of 15 U.S.C. § 1125(a). Defendants' use of the Freestyle Shark Trade Dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Plaintiff.

61. The Freestyle Shark Trade Dress is entitled to protection under the Lanham Act. The Freestyle Shark Trade Dress includes unique, inherently distinctive and non-functional designs. Plaintiff has extensively and continuously promoted and used the Freestyle Shark Trade Dress in commerce throughout the United States. Through that extensive and continuous use, the Freestyle Shark Trade Dress has become a well-known indicator of the origin and quality of Plaintiff's Shark watches. The Freestyle Shark Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, the Freestyle Shark Trade Dress acquired this secondary meaning before Defendants commenced its unlawful use of the Freestyle Shark Trade Dress ess in connection with the infringing products.

62. Plaintiff has been damaged by Defendants' unlawful use of the Freestyle Shark Trade Dress and, unless enjoined, Defendants' unlawful use of the Freestyle Shark Trade Dress will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law. The injury to Plaintiff includes at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff, the Freestyle Shark Trade Dress, and Plaintiff's Shark watches.

63. Defendants' use of the Freestyle Shark Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the infringing product design to the Freestyle Shark Trade Dress, as demonstrated above, and by Defendants' continuing disregard for Plaintiff's rights.

64. Plaintiff is entitled to injunctive relief, and Plaintiff is entitled to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages/profits, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**COUNT II:**
**FEDERAL UNFAIR COMPETITION BY DEFENDANTS**

65. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

66. Defendants have used and continue to use the Freestyle Shark Trade Dress in commerce, on counterfeits, reproductions, copies, or colorable imitations thereof.

67. The acts of Defendants complained of herein constitute trade dress infringement, false designations of origin, false or misleading descriptions or representations of fact on or in connection with goods or services, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68. Plaintiff has been damaged by Defendants' acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein.

69. The nature of Defendants' acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein and/or Defendants' willfulness and bad faith, make this an exceptional case under 15 U.S.C. § 1117.

**COUNT III:**
**TRADEMARK INFRINGEMENT UNDER THE COMMON LAW OF TEXAS BY DEFENDANTS**

70. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

71. The acts of Defendants complained of herein constitute infringement in violation of the common law of Texas.

72. Plaintiff has been damaged by Defendants' acts of common law trademark infringement.

## IV. COUNT IV: Texas Common Law Unfair Competition

73. Plaintiff repeats the allegations above as if fully set forth herein.

74. The acts of Defendants complained of herein constitute trade dress infringement, false designations of origin, false advertising, and other unfair competition in violation of Texas common law.

75. Plaintiff has been and continues to be damaged by Defendants' conduct in an amount to be determined at trial.

76. Upon information and belief, Defendants' conduct is willful, deliberate, intentional and in bad faith.

77. By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff. Plaintiff has no adequate remedy at law to address these injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment against Defendants as follows:

1. That Defendants violated 15 U.S.C. § 1125(a) and the Texas Common Law;

2. A determination that the case is "exceptional," under 15 U.S.C. § 1117(a).

3. Preliminarily and permanently enjoining and restraining Defendants, their affiliates, subsidiaries, related companies, and all those acting in concert or participation with them from:

(a) using the Freestyle Shark Trade Dress or any trade dress that is confusingly similar to Plaintiff's trade dress on watches;

(b) otherwise competing unfairly with Plaintiff in any manner, including, without limitation, unlawfully adopting or using any other designs that are likely to cause confusion with Plaintiff's trademarks.

(c) committing any acts or making any statements calculated, or the reasonably foreseeable consequence of which would be, to infringe the Freestyle Shark Trade Dress, or to confuse, mislead, or deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiff or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by Plaintiff; and

(d) conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a), (b), and (c) above;

4. That Defendants, their affiliates, subsidiaries, related companies, and all those acting in concert or participation with them be ordered to:

(a) remove from all websites any depiction of references to watches containing the Freestyle Shark Trade Dress or any confusingly similar trade dress;

(b) recall and destroy (or deliver to the Court for destruction) all products and packaging consisting of, involving, or related to the infringing watches and provide proof to the Court of the same; and

(c) destroy (or deliver to the Court for destruction) any and all advertising or promotional or other materials pertaining to the infringing watches and all products utilizing the Freestyle Shark Trade Dress or any confusingly similar trade dress on watches, regardless of the medium on which such

advertising, promotional, or other materials are contained and provide proof to the Court of the same;

5. That Defendants be required to file with this Court and serve upon Plaintiff within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants complied with the injunction.

6. That Defendants be required to account for, and turn over to Plaintiff, all profits realized as a result of its infringement and other unlawful acts, such award of profits to be enhanced as the Court finds just under the circumstances of this case;

7. That Plaintiff be awarded its actual and/or statutory damages and Defendants' profits and that said damages/profits be trebled pursuant to 15 U.S.C. § 1117 or other applicable law based on Defendants' counterfeiting.

8. That Plaintiff be awarded its attorney's fees pursuant to 15 U.S.C. § 1117(a) or other applicable law;

9. That Plaintiff be awarded its costs of this action, and prejudgment and post-judgment interest;

10. That Plaintiff be awarded exemplary damages; and

11. That Plaintiff be granted such other and further relief, at law or in equity, as the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(B) and 5(d), Plaintiff demands a jury trial of all issues triable by jury.

**BROOKS KUSHMAN P.C.**

Date: October 23, 2026

/s/ Mark A. Cantor
Mark A. Cantor

Reza Roghani Esfahani
150 W. Second Street, Suite 400N
Royal Oak, MI 48067
Tel: (248) 358-4400 / Fax: (248) 358-3351
Email: mcantor@brookskushman.com
resfahani@brookskushman.com

*Attorneys for Plaintiff*